**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **Derek Allen, et al.,** | |
| **Plaintiffs,** | |
| **v.** | **CIVIL ACTION NO.  4:20-cv-04139** |
| **Vertafore, Inc.,** | |
| **Defendant.** | |

**<u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) AND 12(b)(6)</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................. II

I.      NATURE AND STAGE OF THE PROCEEDING. ................................. 1

II.     STATEMENT OF THE ISSUES AND STANDARD OF REVIEW...................... 1

III.    SUMMARY OF THE ARGUMENT...................................................... 3

IV.     RELEVANT BACKGROUND........................................................... 5

    A.      The Driver's Privacy Protection Act............................................ 5

    B.      Factual Background................................................................ 7

V.      ARGUMENT. ............................................................................... 9

    A.      The Complaint Should Be Dismissed Because Plaintiffs Fail to Allege Article III Standing................................................................. 9

    B.      Plaintiffs' Complaint Should be Dismissed for Failure to Plead a Cognizable DPPA Claim........................................................... 13

        1.      The Complaint Fails Because Plaintiffs Do Not Allege that Vertafore's Purported Disclosure Was for an Impermissible Purpose. ............................................................................... 14

        2.      The Complaint Does Not Adequately Allege That Vertafore "Knowingly Disclosed" Information Protected Under the DPPA... 17

VI.     CONCLUSION. .......................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. AmeriPro Funding, Inc.*,
848 F.3d 698 (5th Cir. 2017) ...................................................................... 10

*Artesanales v. Dow Quimica de Colombia S.A.*,
988 F.2d 559 (5th Cir. 1993) ...................................................................... 25

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ...................................................................... 18

*Bosarge v. Miss. Bureau of Narcotics*,
796 F.3d 435 (5th Cir. 2015) ........................................................................ 9

*Bradix v. Advance Stores Co.*,
No. 16-cv-4902, 2016 U.S. Dist. LEXIS 87368 (E.D. La. July 5, 2016) .................... 19

*Brown v. Protective Life Ins. Co.*,
353 F.3d 405 (5th Cir. 2003) ...................................................................... 17

*Sistrunk v. TitleMax, Inc.*,
No. 5:14-cv-628, 2018 U.S. Dist. LEXIS 64589 (W.D. Tex. Feb. 22,
2018) ............................................................................................................ 25

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ............................................................................ 16, 18

*Enslin v. Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) ..................................................... 18, 27

*Graczyk v. West Publ'g Corp.*,
No. 09-cv-4760, 2009 U.S. Dist. LEXIS 120256 (N.D. Ill. Dec. 23,
2009) ..................................................................................................... 11, 23

*Green v. eBay Inc.*,
No. 14-cv-1688, 2015 U.S. Dist. LEXIS 58047 (E.D. La. May 4, 2015) .................. 19

*Gulsvig v. Mille Lacs County*,
No. 13-cv-1309, 2014 U.S. Dist. LEXIS 43951 (D. Minn. Mar. 31,
2014) ............................................................................................................ 25

*Holmes v. Countrywide Fin. Corp.*,
    No. 5:08-cv-00205, 2012 U.S. Dist. LEXIS 96587 (W.D. Ky. July 12,
    2012) ............................................................................................................ 27

*Kiminski v. Hunt*,
    No. 13-cv-185, 2013 U.S. Dist. LEXIS 157829 (D. Minn. Sep. 20,
    2013) ...................................................................................................... 25, 26

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................ 16, 17

*Maracich v. Spears*,
    570 U.S. 48 (2013) .................................................................................. 12, 26

*Miller v. City of East Mountain*,
    No. 2:17-cv-00496, 2019 U.S. Dist. LEXIS 95505 (E.D. Tex. Feb. 6,
    2019) ............................................................................................................ 22

*Mulvey v. Allstate Ins. Co.*,
    No. 3:18-cv-1271, 2018 U.S. Dist. LEXIS 204804 (N.D. Tex. Dec. 4,
    2018) ...................................................................................................... 19, 20

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ...................................................................... 9

*Pelletier v. Vict. Air Conditioning, Ltd.*,
    780 F. App'x 136 (5th Cir. 2019) ................................................................ 9

*Peters v. St. Joseph Servs. Corp.*,
    74 F. Supp. 3d 847 (S.D. Tex. 2015) ......................................................... 18

*Prince v. Curry*,
    423 F. App'x 447 (5th Cir. 2011) ................................................................ 9

*Rivera v. Wyeth-Ayerst Labs.*,
    283 F.3d 315 (5th Cir. 2002) ...................................................................... 17

*Roth v. Guzman*,
    650 F.3d 603 (6th Cir. 2011) ...................................................................... 25

*In re Sec. Litig. Bmc Software*,
    183 F. Supp. 2d 860 (S.D. Tex. 2001) ....................................................... 14

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
    607 F.3d 1029 (5th Cir. 2010) .................................................................... 9

*Singh v. RadioShack Corp.*,
    882 F.3d 137 (5th Cir. 2018) ..................................................................... 17

*Sistrunk v. TitleMax, Inc.*,
    No. 5:14-cv-628, 2017 U.S. Dist. LEXIS 131241 (W.D. Tex. Aug. 17,
    2017) ................................................................................................... 25, 26

*Sistrunk v. Titlemax, Inc.*,
    No. 5:14-cv-628, 2017 U.S. Dist. LEXIS 132675 (W.D. Tex. May 30,
    2017) .......................................................................................................... 26

*Taylor v. Acxiom Corp.*,
    612 F.3d 325 (5th Cir. 2010) ...........................................................*passim*

*Valenza v. Santos*,
    No. 16-cv-1058, 2016 U.S. Dist. LEXIS 171951 (E.D. La. Dec. 13,
    2016) .......................................................................................................... 23

*Young v. West Publ'g Corp.*,
    724 F. Supp. 2d 1268 (S.D. Fla. 2010) ........................................... 11, 20, 23

**Statutes**

18 U.S.C. § 2721(b) ........................................................................ 10, 12, 21, 22

18 U.S.C. § 2721(b)(1)-(14) ................................................................................ 13

18 U.S.C. §2721(b)(6) ......................................................................................... 22

18 U.S.C. § 2722(a) ............................................................................................. 10

18 U.S.C. § 2723(a) ............................................................................................. 13

18 U.S.C. § 2723(b) ............................................................................................. 13

18 U.S.C. § 2724(a) ........................................................................................ 13, 25

18 U.S.C. § 2724(b)(1) ........................................................................................ 13

18 U.S.C. § 2771(b)(6) ........................................................................................ 11

**Other Authorities**

45 C.F.R. § 160 *et seq.* ...................................................................................... 13

Fed. R. Civ. Pro. 12(b)(1) .......................................................................... 8, 9, 20

Fed. R. Civ. Pro. 12(b)(6) ................................................................................. *passim*

U.S. CONST. art. III, § 2 ............................................................................. 16

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Vertafore, Inc. ("Vertafore") respectfully moves this Court to dismiss this case for lack of standing and for failure to state a claim upon which relief can be granted.

## I.      NATURE AND STAGE OF THE PROCEEDING.

Plaintiffs Derek Allen, Leandre Bishop and John Burns (collectively, "Plaintiffs"), filed their Complaint against Defendant Vertafore, Inc. ("Vertafore") on December 4, 2020.   Plaintiffs allege that Vertafore violated the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, by inadvertently storing files containing Texas driver information on unsecured third-party external servers.   Plaintiffs assert a single claim against Vertafore under the DPPA, and seek tens of billions of dollars in liquidated damages as "compensation" for their conjectural injuries of being at an "increased risk of identity theft and identity fraud."   Plaintiffs' allegations are without legal support, as Congress did not draft nor intend the DPPA to impose civil liability under the circumstances presented by this case.   Among other things, it is undisputed that Vertafore lawfully obtained the information for a permissible use, and did not knowingly disclose the information for an improper purpose.   Vertafore now moves to dismiss Plaintiffs' lawsuit pursuant to Fed. R. Civ. Pro. 12(b)(1) because Plaintiffs lack standing, and pursuant to Fed. R. Civ. Pro. 12(b)(6) because Plaintiffs fail to state a claim upon which relief can be granted.

## II.      STATEMENT OF THE ISSUES AND STANDARD OF REVIEW.

The issues presented are whether Plaintiffs lack standing and whether Plaintiffs fail to plead a cognizable claim under the DPPA.

As the Fifth Circuit has explained, "[s]tanding jurisprudence contains two strands: Article III [or constitutional] standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Pelletier v. Vict. Air Conditioning, Ltd.*, 780 F. App'x 136, 139 (5th Cir. 2019) (quotation omitted) (affirming dismissal for lack of standing). "A dismissal for lack of constitutional standing should be granted under Rule 12(b)(1) for lack of subject matter jurisdiction." *Id.* (citations omitted). When a defendant raises a 12(b)(1) "facial attack" on standing, "the trial court must look to the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). The Complaint stands only if those jurisdictional allegations adequately support subject matter jurisdiction. *Id.*

To withstand a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), a plaintiff must proffer "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Prince v. Curry*, 423 F. App'x 447, 449 (5th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015) (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice" to defeat dismissal. *Alexander v. AmeriPro Funding, Inc.*, 848 F.3d 698, 706 (5th Cir. 2017) (quoting *Ashcroft*, 556 U.S. at 678).

## III.   SUMMARY OF THE ARGUMENT.

Plaintiffs' Complaint seeks billions of dollars in statutory damages based on the bare-bones allegation that Vertafore violated the DPPA when it "knowingly disclosed the Driver's License Information of Plaintiffs and approximately 27.7 million other Class members by storing that information on unsecured external servers" that "appears to have been accessed without authorization." Compl. ¶¶1, 12. As an initial matter, Plaintiffs lack standing because their speculative alleged injuries are merely an "increased risk of identity theft and identity fraud." Compl. ¶17. Allegations of an increased risk of future harm are insufficient as a matter of law to establish the injury-in-fact element required for Article III standing, as the majority of federal courts (including courts within the Fifth Circuit and this District) have ruled when confronted with claims arising from data breaches.

Independently, and even if the Court were to take the Complaint's legal conclusions that are couched as factual allegations as true (though it should not), the Complaint fails to state a legally cognizable claim and should be dismissed. Plaintiffs allege in paragraph 27 of the Complaint that: "[t]he DPPA, 18 U.S.C. § 2722(a), prohibits any person, organization, or entity from knowingly obtaining or disclosing 'personal information, from a motor vehicle record, for a purpose not permitted under [§ 2721(b) of the DPPA]'." Compl. ¶27. Plaintiffs apparently acknowledge that Vertafore, a software company that provides support services for the insurance industry, obtained the drivers' information for

- 3 -

a proper purpose.  *See* 18 U.S.C. § 2771(b)(6) (which permits "use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting.").  A civil violation of the DPPA here would require both (i) a knowing and voluntary disclosure of driver's information; (ii) for an improper purpose.  Plaintiffs do not (and cannot) allege either.

Importantly, Plaintiffs' interpretation of the DPPA is contrary to both the statute's plain language and Congressional intent.  Vertafore is unaware of ***any*** published federal court decision that applies the DPPA under facts comparable to this case.[1]  If Plaintiffs' interpretation of the DPPA were adopted, it would have a chilling effect on the fourteen permissible uses of motor vehicle records explicitly authorized by Congress that serve legitimate and beneficial public needs.  Insurance and insurance support organizations, like Vertafore, as well as private parties and entities acting on behalf of federal, state and local agencies, and manufacturers and dealers involved with motor vehicle safety, among others, would be subject to catastrophic liability for statutorily liquidated damages arising out of inadvertent data events and data breaches despite no knowing use or disclosure for an improper purpose.

---

[1]Indeed, two federal courts (including in prior litigation involving Plaintiffs' counsel) have rejected other attempted distortions of the DPPA as unsupported and leading to absurd results.  *See, e.g.*, *Graczyk v. West Publ'g Corp.*, No. 09-cv-4760, 2009 U.S. Dist. LEXIS 120256, at *6 (N.D. Ill. Dec. 23, 2009), *aff'd* 2011 U.S. App. LEXIS 19748; *Young v. West Publ'g Corp.*, 724 F. Supp. 2d 1268, 1283 (S.D. Fla. 2010).

## IV.    RELEVANT BACKGROUND.

### A.    The Driver's Privacy Protection Act.

The DPPA is a federal statute governing the sale and resale of certain "personal information" from motor vehicle records.  The DPPA was passed in 1994 as part of the Violent Crime Control and Law Enforcement Act of 1994.  Following the murder of an actress in 1989 by a stalker who had obtained her unlisted home address through the California DMV, the DPPA was enacted for the purpose of protecting drivers from violent criminals, and from abusive direct marketing and solicitation practices.  *See Maracich v. Spears*, 570 U.S. 48, 57 (2013).  The legislative history of the DPPA supports this as the intended purpose.[2]

In contrast to improperly obtaining and using personal information to commit violent crimes or for harassment through targeted marketing and solicitation, the DPPA recognizes fourteen expressly "permissible uses" for personal information obtained by a state department of motor vehicles in connection with a motor vehicle record.  18 U.S.C. § 2721(b).  Included in the permitted uses, Congress expressly allowed obtaining and

---

[2]Examples cited in the Congressional record as providing the impetus for the DPPA included "a group of teenagers recorded the license plate numbers of expensive cars they saw, obtained the names and addresses of the owners, and robbed their homes;" "a woman found out the names and addresses of over 30 licensed drivers by tracing the information through their license plate numbers, claiming she needed the information because the drivers in question were stealing the fillings from her teeth;" and "actress Rebecca Schaeffer was gunned down at her Los Angeles apartment, by a man who had—through a private investigator--obtained her home address through the California DMV."  Protecting Driver Privacy: Hearings on H.R. 3365 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary, 103d Cong., 2d Sess. 1994 WL 212698 (Feb. 3, 1994).

disclosing personal information in connection with insurance and insurance support organizations, national security, law enforcement, motor vehicle safety, the service of process, the enforcement of judgments, research and statistical reports and numerous other permitted uses.  18 U.S.C. § 2721(b)(1)-(14).  This includes "[f]or use by any insurer or insurance support organization, in connection with claims investigation activities, antifraud activities, rating or underwriting."  *Id.* at § 2721(b)(6).

The statute includes a *mens rea* requirement, and a person who knowingly violates the DPPA by obtaining, using or disclosing drivers' personal information for an improper use is subject to a "criminal fine."  18 U.S.C. § 2723(a).  The DPPA also provides for a limited private right of action against a person who "***knowingly*** obtains, discloses or uses personal information, from a motor vehicle record, ***for a purpose not permitted***" under the DPPA.  18 U.S.C. § 2724(a) (emphasis added).[3]  Remedies available to private plaintiffs include "actual damages, but not less than liquidated damages in the amount of $2,500," among other relief.  18 U.S.C. § 2724(b)(1).

---

[3]Importantly, the DPPA does ***not*** regulate the manner in which driver's license information covered under the statute is stored, handled, or maintained.  This is in contrast with several other federal privacy statutes, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and associated regulations, which contain detailed provisions regulating the storage and transmission of health data.  *See, e.g.*, 45 C.F.R. § 160 *et seq.* (regulations regarding the HIPAA Security Rule).  The DPPA also contains no provisions making mismanagement of access to driver's license data actionable through a private right of action.  Rather, under the DPPA, only the U.S. Attorney General may bring an enforcement action for the mismanagement of driver's license information, and only in instances in which a State department of motor vehicles has a "policy or practice of substantial noncompliance with [the DPPA]".  18 U.S.C. § 2723(b).  This provision does not apply to private entities such as Vertafore, and Plaintiffs do not allege otherwise.  In any event, the Attorney General's remedies are also limited to imposing a civil penalty of "not more than $5,000 a day for each day of substantial noncompliance."  *Id.*

**B.     Factual Background.**

Vertafore is an insurance software company that "provides enterprise software solutions, specifically management systems, content management and workflow, sales tools, compliance, rating, and comprehensive agency solutions" for the insurance industry. Compl. ¶¶6, 10.

Plaintiffs are citizens and residents of Texas. *Id.* at ¶¶3-5. All three Plaintiffs allege that "[s]ince prior to February 2019" they have had a Texas driver's license. *Id.*

The Complaint's allegations concern a data event that Vertafore disclosed on November 10, 2020 (the "Data Event"). Vertafore's press release regarding the Data Event, which is quoted several times in the Complaint, stated[4]:

> Vertafore takes data privacy and security very seriously. The company has safeguards to protect its information and systems with dedicated internal teams and partnerships with leading external firms. Vertafore recently determined that as a result of human error, **three data files were inadvertently stored in an unsecured external storage service** that appears to have been accessed without authorization.

> The files, which included driver information for licenses issued before February 2019, contained Texas driver license numbers, as well as names, dates of birth, addresses and vehicle registration histories. **They did not contain any Social Security numbers or financial account information.**

---

[4]It is well-established that "[c]ourts may routinely consider not just documents named in Plaintiffs' complaint, but even documents that, if not named, are 'pertinent,' 'central' or 'integral to [Plaintiffs'] claim.' The Fifth Circuit recognizes the incorporation-by-reference doctrine." *In re Sec. Litig. Bmc Software*, 183 F. Supp. 2d 860, 864 (S.D. Tex. 2001) (citation omitted). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). Vertafore's press release concerning the Data Event is both named and repeatedly quoted in the Complaint. Compl. ¶12 (quoting "Vertafore's notice"). It is also integral to Plaintiffs' claims. *See id.* at ¶¶11-17, 30-32. As such, the Court may consider the press release in its entirety for purposes of Vertafore's motion to dismiss.

**No information misuse has been identified.**  No customer data nor any other data—including partner, vendor, or other supplier data—or systems hosted for them were impacted.  Additionally, no Vertafore system vulnerabilities were identified.

**Immediately upon becoming aware of the issue, Vertafore secured the potentially affected files** and has been investigating the event and the extent to which data may have been impacted.  A leading consulting firm with expertise in these matters is assisting in the investigation, and Vertafore has reported the matter to the Texas Attorney General, Texas Department of Public Safety, Texas Department of Motor Vehicles and U.S. federal law enforcement. Vertafore is actively assisting law enforcement.

In mid-August, Vertafore determined that, at some point between March 11 and August 1 of this year, there was potential unauthorized access to the three data files.  **The files were maintained to support a specific product within Vertafore's insurance rating solutions** and contained Texas driver information for approximately 27.7 million people.

**Vertafore immediately engaged a leading intelligence firm to search for evidence indicating potential misuse of this information in connection with this event.**  Although **that firm did not find any evidence**, to be considerate of all Texas driver license recipients and out of an abundance of caution, Vertafore is offering them one year of free credit monitoring and identity restoration services in recognition that these services offer valuable protection in other contexts beyond this event.

Vertafore has set up a dedicated website and call center with additional information about this event and the availability of the free services www.vertafore.kroll.com.The call center may be reached by calling 888-479-3560**.**  Vertafore sincerely regrets any inconvenience this may cause.

Vertafore Statement Regarding Data Event, dated Nov. 10, 2020 (emphasis added).[5]

---

[5]*Available at* https://www.vertafore.com/resources/press-releases/vertafore-statement-regarding-data-event#:~:text=DENVER%20(November%2010%2C%202020),privacy%20and%20security%20very%20seriously.&text=Vertafore%20recently%20determined%20that%20as,have%20been%20accessed%20without%20authorization (emphasis added), attached hereto as Exhibit A.

Plaintiffs vaguely allege that as a result of the Data Event "Plaintiffs' and Class members' privacy has been violated, their Driver's License Information is now in the hands of criminals and they face a substantially increased risk of identity theft and identity fraud." Compl. ¶17.  They seek to represent a class consisting of "[a]ll persons whose Texas driver's license information was stored by Vertafore on an unsecured external storage service online and accessed without authorization." *Id.* at ¶18.  Significantly, totally absent from the Complaint are any allegations that any of the three Plaintiffs has actually been a victim of identity theft and/or fraud or that they have suffered any non-speculative harm as a result of the Data Event.

## V.    ARGUMENT.

### A.    The Complaint Should Be Dismissed Because Plaintiffs Fail to Allege Article III Standing.

Rather than alleging any adequate injury-in-fact, Plaintiffs merely assert that they are at an increased risk of speculative future harm.  This requires dismissal of the Complaint for lack of Article III standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 422 (2013) ("We hold that respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending"); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (dismissing case for lack of standing).  Article III limits federal court jurisdiction to actual "cases or controversies." U.S. CONST. art. III, § 2.  As the Supreme Court has stated, standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 U.S. at

560.   This includes the following three elements, which constitute the "irreducible constitutional minimum of standing":

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent not conjectural or hypothetical … Second, there must be a causal connection between the injury and the conduct complained of … Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61.  The Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of proof in establishing all three elements.  *Id.* at 561.  "Failure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit."  *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 319 (5th Cir. 2002) (dismissing claims for lack of standing).

Additionally, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class."  *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003) (dismissing class action for lack of standing because named plaintiff did not allege that she herself suffered any injury).  This is because, consistent with Supreme Court precedent:

> That a suit may be a class action . . . adds nothing to the question of standing, for even named *plaintiffs who represent a class must allege and show that they personally have been injured*, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent.

*Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) (*per curiam*) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)) (affirming dismissal for lack of standing) (emphasis added)).

Here, Plaintiffs' speculative risk of future harm is not an "injury" sufficient to create Article III standing.   Plaintiffs conclusorily speculate that "their Driver's License

- 10 -

Information is now in the hands of criminals, and they have a substantially increased risk of identity theft and identity fraud." Compl. ¶17. However, as made clear by the Complaint itself, Plaintiffs do not face a "certainly impending" or "substantial" risk of harm as *Clapper* and Article III requires.[6]

Following the Supreme Court's ruling in *Clapper*, the majority of courts dealing with data event cases have held that **absent allegations of actual identity theft or other actual fraud, the increased risk of such harm alone is _not_ sufficient to satisfy Article III standing.**[7]  Consistent with this approach, district courts within the Fifth Circuit routinely dismiss data event class actions for lack of standing where, like here, the only alleged injury is a heightened risk of future identity theft or fraud.  *See Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 849 (S.D. Tex. 2015) (dismissing data breach class action

---

[6]To the extent Plaintiffs rely on Vertafore's press release as the basis for their allegation that their personal information "is now in the hands of criminals," this speculative assertion is without support.  Compl. ¶¶1, 17.  As stated in the press release, "Vertafore immediately engaged a leading intelligence firm to search for evidence indicating potential misuse of this information in connection with this event" and "that firm ***did not find any evidence***."  Ex. A. ("**No information misuse has been identified**.").  For the same reason, while Plaintiffs generically allege their "privacy has been violated," to the extent they rely on Vertafore's press release as the basis for this allegation, it is unsupported, and such vague, generic statements are not well-pled facts plausibly establishing standing.

[7]*See, e.g.*, *Beck v. McDonald*, 848 F.3d 262 (4th Cir. 2017) (holding plaintiffs lacked Article III standing in data breach involving the disclosure of plaintiffs' names, birth dates, the last four digits of social security numbers, and physical descriptors (age, race, gender, height, and weight), as *Clapper* was controlling and plaintiffs' allegations of future identity theft and fraud insufficient to confer standing); *see also Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 664 (E.D. Pa. 2015) (discussing *Clapper* in context of DPPA claims and commenting that "[c]ourts that have passed on claims arising out of the loss or theft of [Personal Identifying Information] have hesitated to find the existence of a constitutional injury-in-fact before lost PII is actually misused").

for lack of standing because the plaintiff only alleged a heightened risk of future identity theft—not an injury-in-fact—after name, social security number, birthdate, address, medical records and bank account information were compromised); *Bradix v. Advance Stores Co.*, No. 16-cv-4902, 2016 U.S. Dist. LEXIS 87368, at *10 (E.D. La. July 5, 2016) (lack of standing in data breach class action involving purported disclosure of plaintiff's and class members' names, 2015 gross wages, social security numbers and the state in which the given employee pays income taxes, because unidentified credit inquiries did not constitute cognizable injuries in fact, nor did allegations of potential future identity theft); *Green v. eBay Inc.*, No. 14-cv-1688, 2015 U.S. Dist. LEXIS 58047, at *6 (E.D. La. May 4, 2015) (dismissing data breach class action involving alleged disclosure of plaintiffs' names, encrypted passwords, dates of birth, email addresses, physical addresses, and phone numbers for lack of standing, because allegations that the plaintiff had "statistically certain threat" of identity theft or identity fraud was insufficient to adequately allege an injury-in-fact).

In the context of the DPPA, another Texas federal district court has dismissed a putative class action for lack of Article III standing.  *See Mulvey v. Allstate Ins. Co.*, No. 3:18-cv-1271, 2018 U.S. Dist. LEXIS 204804, at *5-7 (N.D. Tex. Dec. 4, 2018) ("Plaintiff fails to allege he suffered an injury-in-fact which is 'the [f]irst and foremost' of standing's three elements.") (quotation omitted).  Dismissal for lack of standing was required as "[c]ase law is clear that the harm Congress identified in the DPPA is improperly obtaining, disclosing, or using a driver's personal information; not that a person *may* improperly obtain, disclose, or use a driver's personal information."  *Id.* at *6-7 (emphasis added).

- 12 -

Here, the Complaint does not (and cannot) sufficiently allege that the named Plaintiffs' information was knowingly disclosed by Vertafore for an improper purpose under the DPPA that caused them concrete injury-in-fact, and it should be dismissed consistent with *Mulvey*.[8]  *See Mulvey*, 2018 U.S. Dist. LEXIS 204804, at *7 ("Merely alleging that Defendants obtained drivers' information without consent and without a permissible purpose does not satisfy Plaintiff's burden to allege facts demonstrating the particularized and concrete injury-in-fact requirement of standing."); *infra* pp.17-25.[9]

For all these reasons, Plaintiffs lack Article III standing, requiring dismissal of the Complaint under Fed. R. Civ. Pro. 12(b)(1).

### B.  Plaintiffs' Complaint Should be Dismissed for Failure to Plead a Cognizable DPPA Claim.

For Plaintiffs' DPPA claim to withstand a motion to dismiss, it must sufficiently allege three required elements: "(1) the defendant knowingly obtains, discloses or uses personal information; (2) from a motor vehicle record; and (3) for a purpose not permitted."

---

[8]The Fifth Circuit's *dicta* discussion of standing in the context of a DPPA claim in *Taylor v. Acxiom Corp.*, does not speak to whether Plaintiffs in this case have Article III standing (they do not).  612 F.3d 325, 339 n.15 (5th Cir. 2010) (declining to address standing "because we have affirmed the district court's dismissal under Rule 12(b)(6)").  Notably, the court in *Mulvey* did not cite to *Taylor* (and therefore did not find *Taylor* preclusive) in holding plaintiffs lacked Article III standing for their DPPA claim.  *See Mulvey*, 2018 U.S. Dist. LEXIS 204804.

[9]*See also Young v. West Publ'g Corp.*, 724 F. Supp. 2d 1268, 1281 (S.D. Fla. 2010) ("Plaintiffs allege in their Complaint that [d]efendant 'obtained, disclosed and used' proposed Class members' personal information in violation of DPPA.  However . . . these allegations fall substantially short of establishing standing.  Plaintiffs have at this point failed to plea any facts showing that [defendant] has disclosed the personal information *for an impermissible use*.  Therefore, Plaintiffs have failed to show that they have suffered an injury-in-fact.") (emphasis added).

*Taylor v. Acxiom Corp.*, 612 F.3d 325, 335 (5th Cir. 2010) (citations omitted) (affirming Rule 12(b)(6) dismissal of DPPA claim brought as "class action seeking vast potential liquidated damages").  In short, regardless of whether a defendant is alleged to have obtained, disclosed or used personal information from a motor vehicle record, to adequately allege a DPPA violation there must be well-pled allegations that the defendant did so both (1) *knowingly* and (2) *for an improper purpose*—neither of which is present here.  *See id.*

Because the Complaint fails to allege either of these required elements of a DPPA claim, dismissal is required under Rule 12(b)(6).  *First*, Plaintiffs do not plead that Vertafore's disclosure was for an *impermissible purpose* under 18 U.S.C. § 2721(b). *Second*, Plaintiffs fail to adequately allege that Vertafore's *inadvertent* temporary storage of information on an unsecured external third-party server as part of its insurance support business constituted a "knowing disclosure" of their personal information under the DPPA. Either of these deficiencies independently supports dismissal of the Complaint for failure to plead a cognizable DPPA claim.

### 1. The Complaint Fails Because Plaintiffs Do Not Allege that Vertafore's Purported Disclosure Was for an Impermissible Purpose.

The Complaint should be dismissed as Plaintiffs fail to plead the third required element of a DPPA claim: that Vertafore's alleged disclosure of their personal information was "for a purpose not permitted" under 18 U.S.C. § 2721(b).  *Taylor*, 612 F.3d at 335. The Fifth Circuit has unambiguously held that "[t]he plain meaning of the third factor is

that it is **only** satisfied if shown that obtainment, disclosure, or use was not for a purpose enumerated under § 2721(b)." *Id.* (emphasis in original).

Here, the Complaint (and Vertafore's press release, which is cited in the Complaint) clearly show that Vertafore's one and only reason for "obtaining, using or disclosing" the data was for the purpose of Vertafore's insurance rating support business—which is explicitly permitted under 18 U.S.C. § 2721(b)(6). *Compare* Compl. ¶¶10-11, Ex. A ("[t]he files were maintained to support a specific product within Vertafore's insurance rating solutions") *with* 18 U.S.C. § 2721(b)(6) (permitting "use by any insurer or insurance support organization, or by a self-insured entity, or its agents, employees, or contractors, in connection with claims investigation activities, antifraud activities, rating or underwriting").[10]

In comparable situations, other DPPA claims have been dismissed for failure to allege that a defendant used, obtained, or disclosed information protected under the statute for an impermissible purposes. For instance, in *Taylor v. Acxiom Corp.*, the court found that plaintiffs' "factual allegations do not give rise to a plausible right to relief under the DPPA." No. 2:07-cv-0001, 2008 U.S. Dist. LEXIS 115940, at *25-26 (E.D. Tex. Sep. 8, 2009), *aff'd* 612 F.3d 325, *cert denied* 562 U.S. 1169 (citation omitted). This was because "[p]laintiffs have failed to plead any facts alleging that Defendants obtained or used their

---

[10]*See also Miller v. City of East Mountain*, No. 2:17-cv-00496, 2019 U.S. Dist. LEXIS 95505, at *3-4 (E.D. Tex. Feb. 6, 2019) (dismissing with prejudice DPPA claim when "the only factual assertions related to [p]laintiff's allegation that [defendant] violated the DPPA is that '[defendant] obtained, disclosed and used [plaintiff's booking sheet], which contains personal information about [plaintiff] from a motor vehicle record," which plainly was a permitted use of plaintiff's personal information under 18 U.S.C. § 2721(b).").

information *for a purpose not permitted* under the Act." *Id.* (emphasis added.)  And in

*Budri v. FirstFleet Inc.*, the court dismissed a DPPA claim under Rule 12(b)(6) in part

because plaintiff "provides no factual allegations showing that any information was

obtained, disclosed, or used *for an impermissible purpose*."  No. 3:19-cv-0409, 2019 U.S.

Dist. LEXIS 188251, at *39-40 (N.D. Tex. Sep. 20, 2019) (holding that "[b]ecause

Plaintiff's allegations fail to state a claim for relief that is plausible on its face under the

DPPA, this claim should also be dismissed.") (emphasis added).[11]

Notably, other federal courts (and in litigation involving Plaintiffs' counsel), have

dismissed DPPA claims under Rule 12(b)(6) when the Complaint relies upon distorted

applications of the DPPA that would thwart "crucial government and legitimate business

efforts" involving the permissible disclosure and redisclosure of personal information.  *See,*

*e.g.*, *Graczyk v. West Publ'g Corp.*, No. 09-cv-4760, 2009 U.S. Dist. LEXIS 120256, at

*18 (Dec. 23, 2009), *aff'd* 2011 U.S. App. LEXIS 19748 (dismissing DPPA claim under

Rule 12(b)(6) and commenting "if defendant was found liable for obtaining plaintiffs' and

class members' personal information without a permissible use, its liability under § 2724

would potentially be in the billions of dollars in liquidated damages.  This is an absurd

result not in keeping with the plain language, intent, or spirit of the DPPA."); *see also*

*Young v. West Publ'g Corp.*, 724 F. Supp. 2d 1268, 1283 (S.D. Fla. 2010) ("Furthermore,

---

[11]*See also Valenza v. Santos*, No. 16-cv-1058, 2016 U.S. Dist. LEXIS 171951, at *5 (E.D. La. Dec. 13, 2016) (dismissing DPPA complaint when defendant argued that "[t]he text of the [DPPA] limits liability to those who disclose, use, access, or obtain information themselves for an impermissible purpose," and plaintiff conceded he alleged "no facts that [defendant] himself disclosed, used, accessed, or obtained information for an impermissible purpose").

allowing this purported class action to proceed at this point would potentially subject [defendant] to billions of dollars in liability.  Clearly, such result was not the intent of the DPPA.").  The same result should be reached here.

> ### 2.   The Complaint Does Not Adequately Allege That Vertafore "Knowingly Disclosed" Information Protected Under the DPPA.

The Complaint also does not (and cannot) allege that Vertafore *knowingly* disclosed, used or obtained Plaintiffs' driver's license information in violation of the DPPA. Plaintiffs do not allege that Vertafore: (**1**) acted with the requisite *mens rea* to commit a civil violation of the DPPA; or (**2**) committed a voluntary act in violation of the statute. Either deficiency separately requires dismissal of the Complaint.  *See Taylor*, 612 F.3d at 335.

While the Complaint alleges that "Vertafore knew Plaintiffs' and other Class members' Driver's License Information ***was obtained*** from the Texas Department of Motor Vehicles," Compl. ¶30 (emphasis added), Plaintiffs do not allege that this was in violation of the DPPA.  Nor do Plaintiffs allege that Vertafore ***used*** Plaintiffs' personal information in violation of the DPPA.  Instead, Plaintiffs improperly offer a legal conclusion, couched as a factual allegation, that "[i]n violation of the DPPA, Vertafore knowingly disclosed the Driver's License Information of Plaintiffs."  Compl. ¶32.

While the Fifth Circuit has not directly addressed what is required for a "knowing" violation of the DPPA, it has explained that "[i]n interpreting statutes, this Court begins with the text of the statute."  *Taylor v. Acxiom Corp.*, 612 F.3d 325 (5th Cir. 2010) (applying in context of DPPA claim).  Vertafore respectfully submits that under a plain

reading of 18 U.S.C. § 2724(a), "to be liable a defendant must obtain, disclose, or use personal information, ***knowing that it is for a purpose other than one of the permissible purposes***." *Kiminski v. Hunt*, No. 13-cv-185, 2013 U.S. Dist. LEXIS 157829, at *15 (D. Minn. Sep. 20, 2013) (analyzing text of § 2724(a) and other DPPA precedent in reaching this conclusion, which necessitated dismissal of DPPA claim under Rule 12(b)(6)) (emphasis added); *see also Gulsvig v. Mille Lacs County*, No. 13-cv-1309, 2014 U.S. Dist. LEXIS 43951, at *19 (D. Minn. Mar. 31, 2014) (noting that the *mens rea* requirement the DPPA requires as a precondition for liability is "'knowingly,' not negligence," and "***nothing in the Act suggests that the Act imposes a reasonable duty of care to safeguard information subject to the Act***.") (dismissing with prejudice DPPA claim). As the court explained in *Kiminski*, "[u]nder the plain language of the statute, the person who obtains, discloses, or uses the information must do so *for* an impermissible purpose." 2013 U.S. Dist. LEXIS 157829, at *15-16 (emphasis in original) (quotations omitted).[12]

While one district court in the Fifth Circuit has held otherwise, that ruling was subsequently vacated. *See Sistrunk v. TitleMax, Inc.*, No. 5:14-cv-628, 2017 U.S. Dist. LEXIS 131241, at *32 (W.D. Tex. Aug. 17, 2017), *vacated*[13] *by Sistrunk v. TitleMax, Inc.*,

---

[12]*See also Roth v. Guzman*, 650 F.3d 603 (6th Cir. 2011) (holding that state DMV officials were not subject to civil liability under the DPPA unless they *actually knew* that the recipient, who had represented that it had a permissible use for the requested DPPA-protected personal information, would use it for an improper purpose, and reversing denial of motion to dismiss DPPA claim under Rule 12(b)(6), noting that to hold otherwise would render the DPPA "essentially a strict liability statute").

[13]A vacated decision has no precedential weight. *See, e.g., Asociacion Nacional de Pescadores a Pequena Escala o Artesanales v. Dow Quimica de Colombia S.A.*, 988 F.2d

No. 5:14-cv-628, 2018 U.S. Dist. LEXIS 64589, at *12 (W.D. Tex. Feb. 22, 2018).  In any event, *Sistrunk* is readily distinguishable from the current case, as the defendant in *Sistrunk* accessed class members' personal information for purposes of engaging in direct solicitation—quintessential abusive conduct that the DPPA was specifically enacted to prohibit.  *Sistrunk v. Titlemax, Inc.*, No. 5:14-cv-628, 2017 U.S. Dist. LEXIS 132675, at *2 (W.D. Tex. May 30, 2017).[14]  As such, *Sistrunk*'s reasoning should not be applied here. *See id.*

Because the Complaint does *not* (and cannot) allege that Vertafore's employee's ***inadvertent*** act of storing Plaintiffs' information on unsecured external servers was intentionally done, or with knowledge that this was for an improper purpose under the DPPA, Plaintiffs' claim  should be dismissed.[15]  *See Kiminski*, 2013 U.S. Dist. LEXIS 157829, at *15.  However, even if the Court were to adopt the reasoning of *Sistrunk* (it should not), Plaintiffs' DPPA claim would still fail as Plaintiffs do not allege a ***voluntary disclosure*** committed by Vertafore.

---

559, 565 (5th Cir. 1993) (stating that a particular panel opinion "was vacated for rehearing *en banc* and then settled [and] [a]ccordingly . . . is not precedent").

[14]*See also Maracich*, 570 U.S. at 57 (observing that the DPPA responded to two concerns, one of which was "States' common practice of selling personal information to businesses engaged in direct marketing and solicitation").

[15]The only allegation regarding Vertafore's *mens rea* in the Complaint that is not a bare legal conclusion is Vertafore's press release statement that the Data Event was "a result of human error[.]"  Compl. ¶12.  This is not the kind of intentional, knowing conduct for an improper purpose required to establish the required *mens rea*.

On this issue, the reasoning of *Enslin v. Coca-Cola Co.* is instructive. 136 F. Supp. 3d 654 (E.D. Pa. 2015). In *Enslin*, plaintiff filed suit under the DPPA against defendant, his former employer, after laptops containing the personal information of defendant's current and former employees (including plaintiff's) were stolen. *Id.* at 660. The court dismissed plaintiff's claim under Rule 12(b)(6), ruling that "privately holding [a person's driving information], even in an unsecured manner, does not constitute a 'voluntary disclosure' under the DPPA." *Id.* Important to the court in reaching this conclusion was the determination that "[t]he theft of Plaintiff's [personal driving information] cannot be characterized as a 'voluntary action' taken by the Coke Defendants to disclose that information."[16] *Id.*

The same outcome—dismissal under Rule 12(b)(6)—should be reached here. While Plaintiffs take issue with Vertafore's alleged storage of information "on unsecured external servers and accessed by and disclosed to unauthorized third parties," Compl. ¶1, this allegation, even if taken as true, does not constitute a "voluntary disclosure" under the DPPA, *see Enslin*, 136 F. Supp. 3d at 660.

---

[16]The *Enslin* court found persuasive another data breach case involving claims brought under the Fair Credit Reporting Act ("FCRA") "arising out of a loss of personal information after a data breach where 'a ne'er-do-well independently stole [defendant's] customer information.'" *Holmes v. Countrywide Fin. Corp.*, No. 5:08-cv-00205, 2012 U.S. Dist. LEXIS 96587, at *46 (W.D. Ky. July 12, 2012) (dismissing FCRA claim under Rule 12(b)(6). In *Holmes*, the court commented that for purposes of assessing liability under the FCRA, "no coherent understandings of the words 'furnished' or 'transmitted' would give rise to liability under those circumstances." *Id.* Similarly, the *Enslin* court found that "'no coherent understanding' of the word 'disclose' or 'voluntary action' would include theft. 136 F. Supp. 3d at 671 (citations omitted).

## VI.   CONCLUSION.

For all of the above reasons, and in the interests of justice, Vertafore respectfully requests that the Court dismiss Plaintiffs' Complaint under both Fed. R. Civ. Pro 12 (b)(1) and (b)(6).

DATED and FILED January 29, 2021.

OF COUNSEL:

SQUIRE PATTON BOGGS (US) LLP

Rafael M. Langer-Osuna
(admitted *pro hac vice*)
275 Battery Street, Suite 2600
San Francisco, California  94111
Tel.: +1 415 954 0200
Fax: +1 415 393 9887
rafael.langerosuna@squirepb.com

Amanda Dodds Price
Texas State Bar No. 24060935
S.D. No. 1155447
6200 Chase Tower 600 Travis Street
Houston, Texas 77002
Tel.:  +1 713 546 5850
Fax:  +1 713 546 5830
amanda.price@squirepb.com

Kristin L. Bryan (admitted *pro hac vice*)
Marissa Black (admitted *pro hac vice*)
4900 Key Tower, 127 Public Square
Cleveland, Ohio  44114
Tel.:  +1 216 479 8500
Fax:  +1 216 479 8780
kristin.bryan@squirepb.com
marissa.black@squirepb.com

Respectfully submitted,

*/s/ Damond R. Mace*
Damond R. Mace, Attorney-In-Charge
(admitted *pro hac vice*)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower, 127 Public Square
Cleveland, Ohio  44114
Tel.:  +1 216 479 8500
Fax:  +1 216 479 8780
damond.mace@squirepb.com

**ATTORNEYS FOR DEFENDANT
VERTAFORE, INC.**

- 21 -

## CERTIFICATE OF CONFERENCE

I hereby certify that on January 15, 2021, counsel for Vertafore conferred with counsel for Plaintiffs via telephone, who stated that Plaintiffs are opposed to the requested relief.

/s/ Damond R. Mace
Damond R. Mace

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notifications of such filing to all counsel of record.

/s/ Damond R. Mace
Damond R. Mace